UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| PROGRESSIVE HEALTH AND REHAB CORP, an Ohio corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No: 2:22-CV-505 |
| v. | ) ) ) | **CLASS ACTION** |
| PHYSICIANS WEALTH SOLUTIONS, LLC and INTENTIONAL EXCELLENCE LLC, Ohio limited liability companies, | ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, PROGRESSIVE HEALTH AND REHAB CORP. ("Plaintiff"), brings this action on behalf of itself and all others similarly situated, through its attorneys, and except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendants, Physicians Wealth Solutions, LLC ("Physicians Wealth"), and Intentional Excellence, LLC ("Intentional Excellence") (collectively, "Defendants").

## PRELIMINARY STATEMENT

1. This case challenges Defendants' practice of sending unsolicited facsimile advertisements.

2. The Telephone Consumer Protection Act of 1991, 47 USC § 227, *et seq*. (hereafter the "TCPA" or the "Act"), provides in part:

(b) **Restrictions on use of automated telephone equipment**

(1) Prohibitions

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> (C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless--

47 U.S.C. 227(b)(1)(C).

3. The statutory language following "unless" sets forth the requisites for the established business relationship ("EBR") safe harbor/affirmative defense. The restriction regarding unsolicited fax advertisement falls under "automated telephone equipment." 47 U.S.C. § 227(b)(1)(C).

4. In passing the TCPA, Congress found, *inter alia*, that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call,", Pub. L. 102-243, § 2, ¶ 13, and that "Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce," *id*. ¶ 14.

5. In *Mims v. Arrow Fin. Servs., LLC*, the Supreme Court held that Congress passed the TCPA because unregulated telemarketing is "intrusive," a "nuisance," and "rightly regarded as an invasion of privacy." 565 U.S. 368, 372 (2012).

6. The TCPA creates a private right of action for any person or entity that receives an advertisement in violation of the Act "or the regulations prescribed under" the Act and provides for "an action to recover for actual monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater," as well as injunctive relief. *Id.* § 227(b)(3)(A)–(B).

7. The TCPA defines "telephone facsimile machine" as any "equipment which has

the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3).

8. On or about December 2, 2021, and on or about December 7, 2021, Defendants, or a person or entity acting on behalf of Defendants, in violation of the TCPA, successfully sent Plaintiff two unsolicited fax advertisements (the "Faxes"), true and correct copies of which are attached hereto as Exhibits A ("December 2 Fax") and B ("December 7 Fax"), respectively. As discussed further herein, the Faxes are advertisements under the TCPA, Defendants did not obtain prior express permission from Plaintiff or the proposed class to send the Faxes, and the Faxes do not contain a compliant opt-out notice, precluding the affirmative defense of EBR. *See* Exhibits A and B.

9. Plaintiff alleges on information and belief that Defendants have sent, and continue to send, unsolicited advertisements via facsimile in violation of the TCPA, including but not limited to the advertisements sent to Plaintiff.

10. Unsolicited fax advertisements harm the recipients that receive them. Unsolicited fax advertisements occupy fax lines paid for by the recipients, and in the case of stand-alone fax machines, prevents said machines from receiving authorized faxes, prevents their use for authorized outgoing faxes, and causes undue wear and tear on the recipients' fax machines.

11. A recipient of an unsolicited fax advertisement loses paper and ink toner if the fax is printed.

12. An unsolicited fax advertisement intrudes upon the recipient's seclusion, violates the recipient's right to privacy, and is a nuisance.

13. An unsolicited fax advertisement wastes the recipient's time that would have been spent on something else in that it requires additional labor and effort to attempt to discern the source and purpose of the unsolicited fax.

14. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely, liability under the TCPA for sending unsolicited fax advertisements.

15. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendants, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited fax advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## **JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

17. This Court has personal jurisdiction over Defendants because Defendants transact business within this judicial district, have made contacts within this judicial district, and/or have committed tortious acts within this judicial district, including the sending of the Faxes at issue, which were received in this jurisdiction.

## **PARTIES**

18. Plaintiff is an Ohio corporation.

19. Defendants Physicians Wealth and Intentional Excellence are both Ohio limited liability companies.

## FACTS

20. On or about December 2, 2021 ("December 2 Fax"), and December 7, 2021 ("December 7 Fax"), Defendants (or someone acting on their behalf) used a telephone facsimile machine, computer, or other device, to send two unsolicited fax advertisements over Plaintiff's subscribed-to telephone line to Plaintiff's telephone facsimile machine. *See* Exhibits A and B. With the exception of the boldfaced phrase "Don't Miss Out!" on the December 7 Fax, the Faxes are identical.

21. The Faxes are an invitation to a complimentary event at TOPGOLF "for doctors and medical professionals." (Exhibits A and B). The Faxes state in part:

> Bring your A game, B game, C or D game, whatever game you have, and enjoy the evening. Join your fellow colleagues and have as much fun as you can stand. Golfing is optional, good time is mandatory.
>
> \* \* \*
>
> **About The Event**
>
> We have reserved the Chairman's Room and six golf bays at Topgolf Columbus for this exclusive event. Your participation includes:
>
> - 2 hours golfing
> - Complimentary beer or wine ticket
> - Unlimited appetizers
> - Swing analysis by a PGA pro.

(*Id.*)

22. The Faxes further state:

> **John Stewart**, partner in the firm ***Physician's Wealth Solutions***, will present a brief interactive program including market perspective, maximizing investment

5

portfolios in today's environment, and possible scenarios for the future. www.physicians-ws.com

**David Wetmore** is a life and mental fitness coach with ***Intentional Excellence LLC***. He will introduce you to Positive Intelligence, a science based mindfulness coaching approach that leads to a higher degree of mental fitness and well-being. www.intentional-excellence-llc.com.

(*Id.*)

23. Neither the December 2 Fax nor the December 7 Fax contain an opt-out notice.

(*Id.*)

24. The Faxes are advertisements on their face. The Faxes advertise the commercial availability and quality of Physicians Wealth Solutions' financial investment services, and the commercial availability and quality of International Excellence's "mindfulness coaching," which purportedly "leads to a higher degree of mental fitness and well-being." (*Id.*)

25. The Faxes are also a pretext and part of an overall marketing campaign to advertise the commercial availability and quality of Physicians Wealth Solutions' financial investment services and International Excellence's "mindfulness coaching" through a free seminar which included food, drinks, golf, and free swing analysis by a PGA pro

26. Physicians Wealth Solutions describes itself on the Internet as follows:

Physicians Wealth Solutions works with our clients to develop diversified individual portfolios to decrease risk and achieve investment return. Our goal is your financial independence and a secure retirement. We employ the use of individual stocks, ETFs, mutual funds, and bonds tailored to the client's financial needs. Physicians Wealth Solutions also understands the importance of keeping investment costs low to maximize long term return.

Our management fees start as low as 0.5% per year. In addition, most clients qualify for free financial planning.

Charles Schwab & Co., Inc., Member SIPC, maintains the custody of your assets in your own individual account.

(*See* www.physicians-ws.com  (last visited 1/31/22)).

27. Intentional Excellence states in part the following on its website:

I focus exclusively on the human dimension, helping individuals to think with more clarity and ease, and to feel better about themselves and their lives. This higher sense of self and peace of mind allow insights to flow effortlessly to create solutions for obstinate situations and intractable, persistent problems. My engagements teach people where to look for the solutions that always reside within themselves, but just out of sight. I call my style No Agenda Coaching

The most important factor affecting an organization or team's ability to create solutions to difficult problems, or to operate efficiently and productively, is the state of mind of the individuals within it. Working with Intentional Excellence, you and your team will grasp how significantly your mental state affects your work and how to elevate it to function at a higher level in any moment. You will gain insights into the innate capacity everyone has to stay balanced, focused, creative, wise, and enjoying themselves in even the most challenging work environments.

(www.intentional-excellence-llc.com (last visited 1/31/22)).

28. The Faxes each have website contact information. (Exhibits A and B).

29. Defendants created or made the Faxes, or directed and paid a third party to do so, and the Faxes were sent by or on behalf of Defendants with Defendants' full knowledge, authorization, and consent.

30. On information and belief, Defendants receive some or all of the revenues generated from the sale of the services advertised on the Faxes and Defendants profit and benefit from said sales.

31. Plaintiff did not give Defendants "prior express invitation or permission" to send the Faxes.

32. On information and belief, Defendants faxed or caused to be faxed the same and other unsolicited facsimiles advertisements to Plaintiff and at least 40 other recipients or sent the same and other advertisements by fax without first receiving the recipients' express invitation or permission, and without having an EBR as defined by the TCPA and its regulations.

7

33. There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

34. In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendants did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4).

Excluded from the Class are Defendants, their members, managers, employees, agents, and members of the Judiciary. Plaintiff seeks to certify a class which includes, but is not limited to, the fax advertisement sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

35. **Class Size (Fed. R. Civ. P. 23(a)(1)):** Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

36. **Commonality (Fed. R. Civ. P. 23(a)(2)):** Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

    (a) Whether the Faxes and other faxes sent during the class period constitute advertisements under the TCPA and its implementing regulations;

(b) Whether Defendants meet the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(11);

(c) Whether Defendants had prior express invitation or permission to send Plaintiff and the class fax advertisements;

(d) Whether the Faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

(e) Whether Defendants should be enjoined from faxing advertisements in the future;

(f) Whether Plaintiff and the other members of the class are entitled to statutory damages; and

(g) Whether the Court should award treble damages.

37. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or other faxes as the faxes sent by or on behalf of Defendants advertising the commercial availability or quality of their services during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and for all class members based upon the same federal statute. Defendants have acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or other faxes or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

38. **Fair and Adequate Representation (Fed. R. Civ. P. 23(a) (4)):** Plaintiff will fairly and adequately represent and protect the interests of the class. It is interested in this matter,

9

has no conflicts, and has retained experienced class counsel to represent the class.

39. **Predominance and Superiority (Fed. R. Civ. P. 23 (b) (3))**: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a) Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

(b) Evidence regarding defenses or any exceptions to liability that Defendants may assert and attempt to prove will come from Defendants' records and will not require individualized or separate inquiries or proceedings;

(c) Defendants have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

(d) The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Defendants identified persons to receive the fax transmissions and it is believed that Defendants' and/or Defendants' agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economies of time, effort and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendants' practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227 *et seq.***

40. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . ." 47 U.S.C. § 227(b)(1)(C).

41. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

42. **The Faxes**. Defendant sent the Faxes on or about December 2, 2021, and December 7, 2021. The Faxes were "addressed" to the recipients' ten-digit telephone fax numbers. The Faxes were transmitted using a telephone facsimile machine, computer, or other device, through regular telephone lines, to telephone facsimile machines, *i.e.*, equipment that has the capacity "to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." The Faxes constitute advertisements under the Act and the regulations implementing the Act, the Faxes were sent by Defendants without first obtaining prior express invitation or permission, and the Defendants are the senders of the Faxes.

11

Defendants failed to comply with the Opt-Out Requirements in connection with the Faxes, thereby precluding the affirmative defense of EBR.

43. Defendants' actions injured Plaintiff and the other class members. Receiving Defendants' Faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendants' Faxes. Moreover, Defendants' Faxes used Plaintiff's and the other class members' telephone lines and fax machines. Defendants' Faxes cost Plaintiff and the other class members time, as Plaintiff and the other class members and their employees wasted their time receiving, reviewing, and routing Defendants' unauthorized Faxes. That time otherwise would have been spent on Plaintiff's and the other class members' business or personal activities. Defendants' Faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone, and the Faxes are a nuisance.

44. **Defendants' Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Plaintiff Class other faxes that constitute advertisements under the TCPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that Defendant is precluded from sustaining the affirmative defense of EBR due to a noncompliant or nonexistent opt-out notice). By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder.

WHEREFORE, Plaintiff, PROGRESSIVE HEALTH AND REHAB CORP., individually and on behalf of all others similarly situated, demands judgment in its favor and against

Defendants, PHYSICIANS WEALTH SOLUTIONS, LLC and INTENTIONAL EXCELLENCE LLC, jointly and severally, as follows:

A. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B. That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C. That Court enjoin Defendants from additional violations; and

D. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,

PROGRESSIVE HEALTH AND REHAB CORP., individually, and as the representative of a class of similarly-situated persons

By:  By: */s/ Matthew E. Stubbs*
Matthew E. Stubbs – Ohio Bar #0066722
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, OH 45202
Telephone: 513-241-4722 / Fax: 513-786-9227
mstubbs@mojolaw.com

and

Ryan M. Kelly (*pro hac vice to be submitted*)
ANDERSON + WANCA
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847/368-1500 / Fax: 847/368-1501
rkelly@andersonwanca.com

13